UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| James Prestridge,<br><br>      Plaintiff<br><br>v.<br><br>Brian Williams, et al.,<br><br>      Defendants | Case No.: 2:20-cv-00061-APG-BNW<br><br>**Screening Order**<br>**On Second Amended Complain** |

Plaintiff James Prestridge is in the custody of the Nevada Department of Corrections (NDOC). He has submitted a First Amended civil rights complaint under 42 U.S.C. § 1983 (ECF No. 10), and he has filed a motion to file a Second Amended Complaint (ECF No. 11) and an application to proceed in forma pauperis (ECF No. 6). I will again defer the matter of the filing fee. I grant Prestridge's motion for leave to file a Second Amended Complaint and will now screen that civil rights complaint.

**I.     SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United

States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, the Prison Litigation Reform Act (PLRA) requires a federal court to dismiss a prisoner's claim, if "the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *See Bell Atlantic Corp. v.

*Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.*

A reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by a prisoner may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II.    SCREENING OF SECOND AMENDED COMPLAINT

Prestridge sues Warden Brian Williams, Doe NDOC Medical Director, Doe Doctors, and Doe Nurses for events that took place while Prestridge was incarcerated at High Desert State Prison (HDSP). ECF No. 11-1 at 1-3. He asserts two claims and seeks declaratory and monetary relief.

Prestridge alleges the following: In June 2018, Prestridge injured his back simply by bending over. The injury resulted in a sharp, intense, and long-lasting pain. He had trouble walking, standing, and bending over, and he could not sleep or exercise because of the pain. He

slept on a mattress on the floor because he could not climb into the upper bunk. When he was given a lower bunk, he braided sheets and attached them to the top bunk to assist him in getting out of the bed.

Immediately after this injury, Prestridge filed numerous kites seeking medical care, but the only response was "scheduled to see provider." Prison officials never gave Prestridge a date that he would see a doctor.

Prestridge spoke directly to the pill-call nurses. On about June 15, 2018, he told Doe Nurse #1 that he had a serious back injury with stabbing pains in his lower back and left leg and that he could not sustain his own weight. Doe Nurse #1 asked if Prestridge had submitted a kite and indicated that he had been "scheduled to see the provider." Doe Nurse #1 did not question Prestridge about the severity of his injury, did not examine him, and did not place him on a list to see a doctor immediately.

The following day, Prestridge told Doe Nurse #2 that he had a serious back injury with stabbing pains in his lower back and left leg and that he could not sustain his own weight, that he could not sleep on his back or stomach, that he could not exercise, and that he needed his make-shift device to get out of bed. Doe Nurse #2 listened to Prestridge, did not make further inquiries about the severity of his injury, and asked if he had submitted a kite. Doe Nurse #2 stated that he had been "scheduled to see the provider." Doe Nurse #2 did not place Prestridge on a list to see a doctor immediately.

At some point, Prestridge told Doe Nurse #3 about his injury. Doe Nurse #3 told him that her job was to pass out pills and collect medical kites. Prestridge explained that he had back spasms causing him to drop to his knees, pains in his left leg, he could not sleep, and that he needed a cane or a brace. Doe Nurse #3 stated that he was "scheduled to see the provider."

Several months after his injury, Prestridge had a heated discussion with Doe Nurse #4, in which he stated his inability to walk right or to sleep without pain, could not exercise, and needed a cane. Correctional Officer Moye told Prestridge to calm down.

Prestridge talked to Doe Nurses #5 and #6. Both told him that he was scheduled to see the provider.

Prestridge believes he was never placed on the list to see the doctor immediately, was never given an actual date to see a provider, was never asked questions about his back or the severity of his injury, was never given an examination, never given a cane or a brace, and was not given pain medications. Prestridge believes that the nurses are the gatekeepers to see the doctors. Prestridge asked the nurses for pain medication. The nurses responded that he was scheduled to see a provider.

After six months, Prestridge filed an informal grievance on December 3, 2018 asking for treatment. He repeatedly made requests for a back brace or cane. He received a response to his informal grievance on August 14, 2019.

On January 11, 2019, Prestridge fell and suffered several additional injuries. He had sharp and severe pain in his lower back which caused his legs to be unable to sustain his weight causing him to fall. The additional injuries consisted of a bruised left arm, a twisted right ankle, injuries to his hands, and a knot on his head. Prestridge had difficulty raising his arm to wash his hair, and had difficulty doing simple math playing cards for the next two days.

He showed his injuries to Nurse Ferdie and Correctional Officer Philpot at morning pill call. When Prestridge explained that he had been requesting to see a doctor for seven and a half months, Nurse Ferdie told Prestridge that he should have been seen by now.

On January 22, 2019, Prestridge saw Dr. Bryant because of the fall. When Prestridge asked why he had not been seen for seven and a half months, Dr. Bryant responded that medical gets to prisoners as they can. Dr. Bryant asked questions but never conducted an "actual examination" and never touched Prestridge or Prestridge's back. Dr. Bryant was more interested in Prestridge's right ankle. Dr. Bryant ordered a back brace and a cane for Prestridge, which he had been asking for the prior seven and a half months.

Prestridge filed a second informal grievance on March 29, 2019, indicating he had not received a response to his first informal grievance. On April 19, 2019, Mr. Solomon gave Prestridge a First Level Grievance, and told him to go to the First Level procedure because medical had not responded to the informal grievance. Prestridge filed the First Level Grievance on April 22, 2019. The First Level Grievance was rejected on April 25, 2019, for using too many continuation forms. He refiled his First Level Grievance, was told that he was scheduled to see a provider, and that his grievance warrants investigation by Williams. Prestridge filed a Second Level Grievance on June 14, 2019.

On February 26, 2020, Prestridge was seeing Dr. Martin for other health issues and took the opportunity to tell Dr. Martin of his back issues, and that he had only been given a cane, back brace, and IBUs. Dr. Martin conducted an examination, ordered an MRI, and put Prestridge in to be seen by an orthro or neuro doctor.

Prestridge received lidocaine injections to the base of his spine in June 2020 and March 2021, from Dr. Wulff.

In claim 1, Prestridge alleges a violation of the Eighth Amendment through deliberate indifference. In claim 2, he alleges a violation of the Eighth Amendment by causing cruel and

unusual punishment. I interpret the allegations as one claim for Eighth Amendment deliberate indifference to serious medical needs (claims 1 and 2).

### A.      Deliberate Indifference to Serious Medical Needs (Claims 1 and 2)

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id*. "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id*. (internal quotations omitted). When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

A difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Additionally, "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). To establish that a difference of opinion amounted to deliberate indifference, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

I will dismiss this claim with prejudice against Williams, the only named defendant. Based on the allegations, Prestridge alleges he injured his back by bending over in June 2018. Prestridge asserts he informed at least six nurses of the injury and pain, and requested a cane, a back brace, and pain medication. In response, he was told he was scheduled to see a provider. He filed an informal grievance on December 3, 2018 complaining of the delay in seeing a provider. In January 2019, Prestridge experienced a second fall that caused further injury. Following this second fall, Prestridge received treatment from Dr. Bryant on January 22, 2019 consisting of a prescription for a back brace, a cane, and IBUs for pain.

These allegations raise a plausible inference that Prestridge had a serious medical need prior to January 22, 2019 both because (a) he was suffering unnecessary and wanton pain, and (b) the delay in treatment resulted in a further injury. Prestridge has alleged, however, that he filed his First Level Grievance, to which Williams responded, in April 2019. Accordingly, Williams could not have known of either the unnecessary pain Prestridge alleges he suffered prior to January 22, 2019, or the delay in treatment resulting in an injury on January 11, 2019.

Prestridge cannot allege that, when he filed his First Level Grievance, he was suffering from a serious medical need for which he was not being treated.  Prestridge has alleged that he was treated by Dr. Bryant and was prescribed a cane, back brace, and pain medication on January 22, 2019.  Prestridge's allegations that that he received additional treatment from Drs. Martin and Wulff beginning in 2020 neither raises an inference of a delay in treatment nor a deliberate indifference to unnecessary pain at the time Prestridge filed his First Level Grievance. Rather, and construed most favorably to Prestridge, he has alleged at most a difference of medical opinion regarding the medical treatment Dr. Bryant provided on January 22, 2019.  As Prestridge cannot allege he had an untreated serious medical need when he filed his First Level Grievance, he cannot state a cognizable deliberate indifference claim against Williams. Accordingly, I will dismiss Prestridge's deliberate indifference claim against Williams with prejudice.

For similar reasons, Prestridge cannot state a cognizable deliberate indifference claim against Doe Medical Director.  Prestridge asserts the medical director was aware of and deliberately indifferent to his serious medical need because of his Second Level Grievance. However, Prestridge has alleged facts establishing that, subsequent to January 22, 2019, he did not have a serious medical need for which he had not received and was not receiving treatment arising from his June 2018 back injury.

I will again dismiss Doe Doctors and Doe Nurses without prejudice but with leave to amend.  Prestridge has sufficiently alleged that he had a serious medical need following an injury in June 2018 for which treatment was delayed until January 22, 2019.  This delay in treatment resulted in unnecessary pain and, ultimately, a further injury.  Prestridge has alleged that claim

only against Doe defendants. Absent a named defendant, Prestridge cannot have his Second Amended Complaint served on any person, precluding him from litigating this claim.

### B. Leave to Amend

I grant Prestridge leave to file a Third Amended Complaint to cure the deficiency of his failure to name a defendant in his Eighth Amendment claim. If he chooses to file a Third Amended Complaint, he is advised that an amended complaint supersedes (replaces) the original and all amended complaints and, thus, the Third Amended Complaint must be complete in itself. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal). A Third Amended Complaint must contain all claims, defendants, and factual allegations that Prestridge wishes to pursue in this lawsuit. Prestridge should file the Third Amended Complaint on this court's approved prisoner civil rights form and it must be entitled "Third Amended Complaint."

If Prestridge chooses to file a Third Amended complaint curing the deficiencies of his Eighth Amendment claim as outlined in this order, he must file it by November 30, 2021. If he fails to do so, I will dismiss this action with prejudice for failure to state a claim.

### III. CONCLUSION

I therefore order that a decision on the application to proceed in forma pauperis (ECF No. 6) is deferred.

I order that Plaintiff James Prestridge's Motion to File a Second Amended Complaint **(ECF No. 11) is GRANTED**.

I order the Clerk of the Court to file the Second Amended Complaint (ECF No. 11-1).

I order that the Eighth Amendment claim for deliberate indifference to serious medical needs (claims 1 and 2) is (a) dismissed with prejudice against Brian Williams and Doe Medical Director, and (b) is dismissed without prejudice with leave to amend as against Doe Doctors and Doe Nurses.

I order that the Second Amended Complaint (ECF No. 11-1) is dismissed in its entirety.

I order that, if Prestridge chooses to file a Third Amended Complaint curing the deficiencies of his Eighth Amendment claim as outlined in this order, he must file it by **November 30, 2021**.

I order the Clerk of the Court to send Prestridge the approved form for filing a § 1983 complaint, instructions for the same, and a copy of his Second Amended Complaint (ECF No. 11-1). If Prestridge chooses to file an amended complaint, he should use the approved form and write the words "Third Amended" above the words "Civil Rights Complaint" in the caption.

I order that if Prestridge fails to file a Third Amended Complaint curing the deficiencies outlined in this order by **November 30, 2021**, I will dismiss this action with prejudice for failure to state a claim.

Dated: October 23, 2021

_____
Andrew Gordon
U.S. District Judge